**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Genick Bar-Meir,

Plaintiff,

v.

North American Die Casting Association, Edmund A. Herman, Andrew Behler, William Walkington, John Wronowicz, Daniel Twarog, and Stephen Udvardy,

Defendants.

Civil No. 00-1737 RHK/SRN
**MEMORANDUM OPINION AND ORDER**

---

Genick Bar-Meir, pro se, Minneapolis, Minnesota, for Plaintiff.

Jean F. Holloway, Dorsey & Whitney, Minneapolis, Minnesota, and Debra J. Stanek, Sidley & Austin, Chicago, Illinois, for Defendants.

---

## INTRODUCTION

Plaintiff Genick Bar-Meir, a die casting researcher, brought this lawsuit alleging copyright infringement by Defendant North American Die Casting Association ("NADCA")[1]; two of its employees, Daniel Twarog, and Stephen Udvardy; one Board member, Andrew Behler; and three NADCA instructors, Edmund Herman, William Walkington, and John Wronowicz. Plaintiff claims that the Defendants infringed on two

---

[1] NADCA is a not-for-profit corporation that operates as a trade association in the field of die casting. (Doc. No. 11 (Joint Report of Pretrial Meeting).)



FILED FEB 20 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

of his copyrighted works on the subject of die casting. Currently before the Court is a Motion to Dismiss Defendants Daniel Twarog, Stephen Udvardy, Andrew Behler, Edmund Herman, William Walkington, and John Wronowicz for lack of personal jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(2). For the following reasons, the Court will grant the motion.

## BACKGROUND[2]

Plaintiff claims to own the copyright on two works that he authored–an article titled "How to Calculate the pQ² Diagram Correctly"[3] (the "Article"), and a book titled Fundamental of Die Casting Design (the "Book"). (Compl. Ex. A1 (Form TX for the Article); Ex. A2 (Form TX for the Book).) On August 20, 1997, Plaintiff sent a copy of the Article to Paul Bralower, NADCA Editor, requesting that NADCA publish the Article "as is" in its magazine, *Die Casting Engineer*. (Compl., Ex. C (Letter from Bar-Meir to Bralower).) Plaintiff contends that Defendant NADCA subsequently published an altered form of the Article without his permission. (Compl. ¶ 26.) Defendants admit that the Article was edited by NADCA, and published in the May/June 1998 issue of *Die Casting Engineer*. (Answer of Defendants ¶ 26.) According to the Complaint, the Defendants

---

[2] For purposes of this motion, the Court views the facts in the light most favorable to Plaintiff, resolving all conflicts of allegations and drawing all reasonable inferences in his favor. Northrup King v. Compania Productora Semillas, 51 F.3d 1383, 1385 (8th Cir. 1995).

[3] This article was formerly titled "The Mathematical Theory of the pQ² Diagram." (Compl. ¶ 24.)

involved in the infringement were NADCA, Andrew Behler (Chairman of NADCA's Board of Governors), Daniel Twarog (NADCA's President), and Stephen Udvardy (NADCA's Director of Research and Development, and Education). (Compl. ¶¶ 10, 12, & 14.)

On November 2, 1999, Plaintiff sent a copy of the Book to NADCA. (Id.) Plaintiff asserts that on February 2, 2000, Defendants NADCA, Edmund Herman, William Walkington, John Wronowicz, and Andrew Behler infringed on Plaintiff's copyright by plagiarizing both the Book and the Article in various NADCA instructional materials, including materials published on NADCA's website, and in an editorial article of *Die Casting Engineer*. (Compl. ¶ 29.) This suit followed.

## ANALYSIS

### I. Personal Jurisdiction

Once a defendant moves for dismissal for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), the nonmovant bears the burden of establishing a prima facie case that the court has personal jurisdiction over the defendant. Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994). In determining whether the plaintiff has made such a showing, "the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." Digi-Tel Holdings, 89 F.3d at 522 (citing Dakota Indus., Inc. v. Dakota

Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)).

To determine whether a court has personal jurisdiction over a non-resident defendant, that court must determine both: (1) whether jurisdiction lies under the applicable state long-arm statute; and (2) whether the exercise of personal jurisdiction would comply with the requirements of due process. Wessels, Arnold & Henderson v. National Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995). Minnesota construes its long-arm statute, Minn. Stat. § 543.19, to provide the broadest scope of personal jurisdiction possible consistent with the Due Process Clause of the United States Constitution. See Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 411 (Minn. 1992) ("If the personal jurisdiction requirements of the federal constitution are met, the requirements of the long-arm statute will necessarily be met also.") Therefore, "the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process." Bell Paper, 22 F.3d at 818.

Due process dictates that a court may not assert personal jurisdiction over a non-resident defendant unless that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). These minimum contacts, moreover, must be "purposeful." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (stating that the issue of whether the defendant "purposefully established 'minimum contacts' in the forum State" is the "constitutional

touchstone" of due process). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King, 471 U.S. at 475 (quotations and citations omitted).

In determining whether this Court's exercise of personal jurisdiction over a non-resident defendant comports with due process, five factors must be considered: "(1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; [] and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties." Wessels, 65 F.3d at 1432 (citations omitted). Finally, even a single act can support the exercise of personal jurisdiction if it creates a "substantial connection" with the forum state, rather than merely an "'attenuated' affiliation" with the forum state. Burger King, 471 U.S. at 475 n.18.

Because the Plaintiff has the burden of establishing a prima facie case that the court has personal jurisdiction over the Defendants, each Defendant is addressed in the order of appearance in Plaintiff's brief.[4]

---

[4] Plaintiff argues throughout his brief the merits of his copyright infringement claim against the Defendants. For purposes of this motion, however, the Court only looks to whether the Plaintiff has set forth a prima facie case that this Court has personal jurisdiction over the Defendants. Therefore, to the extent that Plaintiff's brief addresses issues not currently before the Court, the Court will not consider them.

## II. Minimum Contacts

### A. William Walkington

William Walkington ("Walkington"), a Wisconsin resident, is an employee of Walkington Engineering, a Wisconsin corporation.[5] (Walkington Decl. ¶¶ 2, 6.) Walkington taught courses on die casting for NADCA, and prepared course matcrials used by himself and other NADCA instructors. (Id. at ¶ 3.) Upon completing the course materials, Walkington would send the materials to NADCA in Illinois, to the attention of Stephen Udvardy for his approval. (Id. at ¶ 4.) Walkington asserts that once the materials were sent to NADCA they became the property of NADCA, and Walkington was not involved in the decision to publish, copy, or distribute the materials. (Id.) It is these course materials that Plaintiff claims infringed on his copyrights.

Plaintiff contends that the following contacts by Walkington with Minnesota are sufficient to satisfy due process: (1) Walkington wrote an article on behalf of NADCA that discussed "how great the research was done" on die casting, that was directed at Plaintiff in Minnesota; (2) Walkington bought Plaintiff's software and had long discussions with Plaintiff about Plaintiff's research; and (3) Walkington has taught NADCA courses in Minnesota. (Pl.'s Opp'n Mem. at 11-12.)

---

[5] Plaintiff alleges that Walkington Engineering is also responsible for the infringing acts and is, therefore, subject to personal jurisdiction in Minnesota. (Pl.'s Opp'n Mem. at 11.) Walkington Enginneering has not been named as a defendant in this case, however, and Walkington Engineering's contacts with Minnesota are not properly before this Court.

According to Plaintiff, the article written by Walkington, on behalf of NADCA, was written to dispute Plaintiff's scientific theories, and was directed at Plaintiff in Minnesota. Plaintiff argues that Walkington knew that the article would be offensive to Plaintiff in Minnesota; and, therefore, Walkington engaged in tortious activity within the forum state. Plaintiff, however, does not allege any tortious activity.

Plaintiff does not argue that Walkington's article infringed on his copyright, or that the article defamed him. Plaintiff's reliance on Calder v. Jones, 465 U.S. 783, 790 (1984), is therefore misplaced. In Calder the Supreme Court held that a defendant's writing and publishing of a magazine article, knowing that it involved a California resident and would be distributed in California, made the defendant subject to California's jurisdiction because they knowingly engaged in tortious activity outside the state that had an effect within the state. Calder, 465 U.S. at 790. Walkington's authorship of an editorial article that was subsequently published by NADCA, and sent to Plaintiff in Minnesota, cannot establish minimum contacts by Walkington.

Plaintiff's allegation regarding Walkington's purchase of Plaintiff's software is likewise insufficient to satisfy minimum contacts. The Court finds that this transaction is too random, fortuitous, or attenuated to satisfy due process. Plaintiff's contention is that "Walkington received software from the Plaintiff and promised to pay ($80)." (Pl's Opp'n Mem. at 12.) According to Plaintiff, Walkington did not pay for the software because he did not have any money with him, and that when Plaintiff called him to inquire about the

money, Walkington stated he did not need to pay because he already had the software. (Id.) Plaintiff then sent Walkington a letter stating that Plaintiff would like to sell him an updated version of the software for $120. (Id.) Upon receiving the $120, Plaintiff kept $80 to cover the software not previously paid for and sent the remaining $40 back to Walkington. (Id.) This transaction allegedly occurred in November of 1993. Plaintiff neglects to state where the initial transaction occurred. From the exhibits Plaintiff has attached to his Memorandum, it appears that Plaintiff sent two letters to Walkington in Wisconsin, and Walkington sent a check to Plaintiff, in Minnesota, in the amount of $120. (Pl.'s Opp'n Mem., Exs. I, J, K.) This transaction, which involved Plaintiff's "$C^VA^P{}_DC$ software manual," does not form the basis of any of Plaintiff's claims and is wholly unrelated to any issue in the case. Also, the alleged infringing activity occurred in 1999, while this transaction took place in 1993. Therefore, the Court finds that the transaction between Plaintiff and Walkington is too attenuated to the matters alleged in this case to form the basis of personal jurisdiction over Walkington.

The last contact that Plaintiff asserts to support personal jurisdiction over Walkington is that he taught some NADCA courses in Minnesota. (Pl.'s Opp'n Mem. at 14.) Walkington, however, has not taught a course in Minnesota since 1996. (Walkington Decl. ¶ 4.) Since this claim did not arise until 1999, when NADCA allegedly infringed on Plaintiff's copyrights, any course that Walkington taught in 1996

could not have contained the infringing material, and is therefore unrelated to this claim.[6]

Even taking the three contacts in the aggregate, the contacts are the result of random, fortuitous, and attenuated actions by Walkington, such that haling Walkington into court in Minnesota would offend the traditional notions of fair play and substantial justice. Accordingly, the Court finds that Plaintiff has not met his burden of establishing a prima facie case of personal jurisdiction over Defendant Walkington.

B. Andrew Behler

Andrew Behler ("Behler") is a Pennsylvania resident employed by a Pennsylvania corporation. (Behler Decl. ¶¶ 2, 5.) Behler avers that his sole contact with the Plaintiff was a 1997 conversation, initiated by Plaintiff, the subject of which was unrelated to this claim. (Id. at ¶ 11.) Plaintiff responds that Behler has had sufficient contacts with Minnesota by virtue of his position as Chairman of the Board of NADCA.[7] (Pl.'s Opp'n

---

[6] Plaintiff could be claiming that Walkington's unrelated contacts with Minnesota should be considered by the Court in finding "general jurisdiction." General jurisdiction allows a court to use unrelated contacts with the forum state as the basis for jurisdiction if they are "substantial, systematic, and continuous." See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987). The software transaction that occurred between Walkington and Plaintiff, and the 1996 courses that Walkington taught in Minnesota, do not amount to substantial, systematic, and continuous contacts with Minnesota such that the Court will not exercise general jurisdiction over Walkington.

[7] Plaintiff also claims that Behler participated in drafting a letter to the University of Minnesota President, Mark Yudof, regarding Plaintiff. The letter was actually written by Danieal Twarog on behalf of NADCA because of concerns over Plaintiff's conduct toward NADCA committee members. The letter requested that Mr. Yudof influence the cessation of Plaintiff's "mean-spirited" conduct. (Pl.'s Opp'n Mem., Ex. M.) The letter was not signed by Behler. Plaintiff only "believes that Mr. Behler initiated or was in

Mem. at 14.) A court, however, may not exercise jurisdiction over individual officers of a corporation merely on the basis of contacts that establish personal jurisdiction over the corporation; the contacts of the officer must be judged separately. Calder, 465 U.S. at 790. The Court, therefore, finds that Behler's position at NADCA does not support haling Behler into court in Minnesota and the Plaintiff has not pointed the Court to any other contacts by Behler which would give this Court personal jurisdiction over him.

C. Edmund Herman

Edmund Herman ("Herman") is a Michigan resident employed by General Motors Corporation. (Herman Decl. ¶¶ 2,6.) Plaintiff claims that Herman volunteered to be on the committee that examined Plaintiff's work, and that he was aware that statements regarding the falsity of Plaintiff's work would have an effect on Plaintiff in Minnesota. (Pl.'s Opp'n Mem. at 16.) Defendants counter that what the committee members actually thought about Plaintiff's work, and any comments made by committee members within the confines of the committee meetings, has nothing to do with Plaintiff's claims for copyright infringement. (Def.'s Reply Mem. at 4.) The Court agrees. The fact that Herman volunteered to be on a NADCA committee that reviewed Plaintiff's work does not relate to Herman's contacts with Minnesota. Therefore, the Court finds that Plaintiff

---

control of the letter." (Pl.'s Opp'n Mem. at 14.) Aside from not being able to trace the letter to Behler, Plaintiff does not allege that the letter had anything to do with his copyright infringement claims.

has not met his prima facie case establishing this Court's personal jurisdiction over Herman.

D. John Wronowicz

Plaintiff asserts that the Court has personal jurisdiction over John Wronowicz ("Wronowicz") for the same reasons as Herman. Wronowicz is an Indiana resident also employed by General Motors Corporation. (Wronowicz Decl. ¶¶ 1 & 6.) Plaintiff claims he was a "controlling individual" because he was also on the committee that reviewed Plaintiff's work. For the reasons stated above, and the lack of allegations regarding Wronowicz's contacts with Minnesota, the Court will not exercise personal jurisdiction over Wronowicz.

E. Stephen Udvardy

Stephen Udvardy ("Udvardy") is NADCA's Director of Research and Development, and Education; he is an Indiana resident employed by NADCA. (Udvardy Decl. ¶ 5.) Plaintiff asserts that Udvardy had the following contacts with Minnesota: an e-mail sent by Udvardy to Plaintiff in April 1998, and a fax sent by Udvardy to Plaintiff in October 1999. (Pl.'s Opp'n Mem., Exs. N, O.) The 1998 letter stated that Udvardy wished to speak to Plaintiff regarding the "non-submittal of [Plaintiff's] proposal." (Id., Ex. N.) The 1999 fax was not faxed to Plaintiff personally but to "Principle [sic] Investigators," and appears to be a "broadcast" fax. There is nothing in either the letter or the fax that would indicate that Udvardy was acting on behalf of himself personally rather

than on NADCA's behalf. Jurisdiction over an employee cannot be predicated on the acts of the employer, unless the employee acted for his own personal gain. Behm v. John Nuveen & Co., Inc., 555 N.W.2d 301, 306 (Minn. Ct. App. 1996). Individual employees must be "primary participants in [the] alleged wrongdoing" of the corporation before "jurisdiction over them is proper on that basis." Calder, 465 U.S. at 790. There is no indication that Udvardy, as an employee of NADCA, was a primary participant in the alleged infringement, such that he may be personally haled into this Court. Accordingly, the Court finds that the contacts by Udvardy, are insufficient to exercise personal jurisdiction over him.

F. Daniel Twarog

Plaintiff claims that this Court has personal jurisdiction over Daniel Twarog ("Twarog") because Twarog wrote a letter to Mr. Yudof, President of the University of Minnesota, on behalf of NADCA. (Pl.'s Opp'n Mem. at 19.) Plaintiff claims that Twarog wrote the letter because he personally wanted Plaintiff fired. (Id.) Twarog is an Illinois resident, and is employed by NADCA as its President. (Twarog Decl. ¶ 3.) There is no evidence before the Court to suggest that Twarog's letter either relates to the claim before the Court, or that the letter was sent by Twarog on his own behalf. Nor is there an allegation that the letter defamed Plaintiff, such that "tortious activity" resulted from Twarog's sending of the letter. Plaintiff has not shown that Twarog had any contact with Minnesota, or that, as an employee, Twarog primarily participated in the alleged

infringing acts. Therefore, the Court finds that personal jurisdiction over Twarog is not proper.

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 14) is **GRANTED**. The Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendants Edmund A. Herman, Andrew Behler, William Walkington, John Wronowicz, Daniel Twarog, and Stephen Udvardy.

Dated: February 20, 2001

RICHARD H. KYLE
United States District Judge