**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**GENICK BAR-MEIR,**

**Plaintiff,**

**v.**

**NORTH AMERICAN DIE CASTING ASSOCIATION,**

**Defendant.**

**Civil No. 00-1666 (RHK/SRN)**

---------------------------------------------------------------- **O R D E R**

**GENICK BAR-MEIR,**

**Plaintiff,**

**v.**

**NORTH AMERICAN DIE CASTING ASSOCIATION, EDMUND A. HERMAN, ANDREW BEHLER, WILLIAM WALKINGTON, JOHN WRONOWICZ, DANIEL TWAROG, and STEVE UDVARDY,**

**Defendants.**

**Civil No. 00-1737 (RHK/SRN)**

---

Plaintiff Genick Bar-Meir appeared pro se.

Debra Stanek, Esq., and Dean Eyler, Esq., on behalf of Defendants.

---

FILED MAR 27 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned Magistrate Judge of District Court on February 23, 2001, on several motions. This Order addresses the non-dispositive motions heard on that day[1]. Each motion is discussed separately below.

**A. Defendant's Motion to Compel Responses to Interrogatories and Document Requests in Civil File No. 00-1737 (RHK/SRN)**

Defendant North American Die Casting Association (NADCA) moves for an order compelling Plaintiff Genick Bar-Meir to respond to its First Set of Interrogatories and First Set of Requests for Production of Documents in Case No. 00-1737. Defendant NADCA submits that, to date, Plaintiff Bar-Meir's discovery responses are not only wholly inadequate, in that Plaintiff continues to refuse to identify in any meaningful way any material that allegedly infringes his copyright in the works Fundamentals of Die Casting Design or "How to Calculate the $pQ^2$ Correctly"; but Plaintiff's unsigned, misdated responses do not comply with Rule 33(b)(1) of the Federal Rules of Civil Procedure. At issue are NADCA's First Set of Interrogatories Nos. 1-6, and First Set of Requests for Production of Documents Nos. 1-7.

---

[1] At the February 23, 2001 hearing the Court also entertained argument on Defendant North American Die Casting Association's Motion for Summary Judgment in Civil File No. 00-1666. A separate Report and Recommendation will issue with respect to that motion.

The Federal Rules of Civil Procedure envision a wide scope of discovery. The Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947) discussed that scope as follows:

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.

Hickman, 329 U.S. at 507-508.

Fed. R. Civ. P. 26(b)(1) specifically provides that "the information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The rule requires only that the information sought be "relevant to the subject matter involved in the pending action." While information that has no conceivable bearing on the case is not discoverable, it is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. 8

Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 2008, at 108-109 (1994).

In the present case, the Court finds all of the information sought by NADCA in its First Set of Interrogatories and Requests for Production of Documents to be relevant to the claims raised in this lawsuit. Accordingly, the Court orders Plaintiff to fully and unequivocally respond to these interrogatories and document requests **within one week of the date of this Order**. As the Court explained at the oral argument on this motion, Plaintiff Bar-Meir, in choosing not to provide discovery, runs the risk that he will be precluded from the opportunity to prove his claims at trial. To avoid such an outcome, the Plaintiff must review NADCA' interrogatories (Nos. 1-6) and requests for production of documents (Nos. 1-7), provide full and complete responses and identify **everything** he believes has been infringed or infringing and, if he has responsive documents, produce them. If Plaintiff does not possess responsive documents, he must say so. The parameters of Plaintiff's claims at trial will be set according to the responsive information he produces pursuant to NADCA's outstanding discovery requests. The Court reminds Plaintiff Bar-Meir that all pleadings, correspondence and discovery responses must be correctly signed and dated. In addition, Plaintiff must verify his interrogatory responses.

Defendant NADCA's motion to compel responses to its First Set of

Interrogatories and First Set of Requests for Production of Documents in Civil Case No. 00-1737 (Doc. No. 28) is granted in its entirety. Defendant's request for an award of attorney's fees and costs incurred in connection with this motion is denied without prejudice at this time.

**B. Plaintiff's Motion to Obtain Permission to Amend/Supplement the Complaint in Civil No. 00-1737 (RHK/SRN)**

Plaintiff Bar-Meir moves for leave to amend his Complaint in Civ. Case No. 00-1737 to include a claim that Defendant NADCA has violated Section 1202(a)(1) of the Copyright Act. In addition, Plaintiff has included without discussion, a paragraph in his proposed Amended Complaint that reads: "On information and believe [sic] all defendants do business in the State of Minnesota." This represents a change to the original Complaint which contains a paragraph which reads: "All defendants, with the exception of Defendant Andrew D. Behler, do business in the State of Minnesota". Finally, Plaintiff has attempted to include – again without discussion of any sort -- in the second version of his proposed Amended Complaint attached to his reply memorandum, the addition of Walkington Engineering, William Butler and Paul M. Bralower as Defendants in this matter.

Defendant NADCA opposes, on various grounds, all of Plaintiff's proposed amendments. Each proposed amendment will be addressed separately below.

**1. Plaintiff's Proposed Amendment Adding A Claim Under 17 U.S.C. § 1202**

Plaintiff Bar-Meir moves for leave to amend his Complaint in Civ. Case No. 00-1737 to include a claim that Defendant NADCA has violated

Section 1202(a)(1) of the Copyright Act. In opposition, Defendant NADCA asserts that Plaintiff's motion in this regard must be denied because the proposed amendment is frivolous as well as futile in that it fails to state a claim on which relief may be granted.

Federal Rule of Civil Procedure 15(a) provides that a court may allow amendments to pleadings "when justice so requires." In interpreting this rule the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment
> . . ., the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). However, neither delay or dilatory motive are sufficient in themselves to deny a party leave to amend a pleading. The delay or dilatory motive must result in prejudice to the party opposing the motion. Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir. 1981). Even if some prejudice would result to the adverse party if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if it is denied. Id.

The Eighth Circuit Court of Appeals has found that leave to amend

may be properly denied when the proposed amendment would be futile. See Holloway v. Dobbs, 715 F.2d 390, 392-94 (8th Cir. 1983). The Eighth Circuit has also held, however, that amendments should be denied on the merits of the claim only if the amendment asserts clearly frivolous claims. Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F. 2d at 694. The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. Niagra of Wisconsin Paper Corp. v. Paper Industry Union Management Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

In the present case, NADCA correctly states that where a proposed amendment is opposed on futility grounds, the legal standard applied is the same as that invoked in a motion to dismiss. See Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d at 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1407 (8th Cir. 1989); Holloway v. Dobbs, 715 F.2d at 392-393; Norbeck v. Davenport Community School Dist., 545 F.2d 63 (8th Cir. 1976), cert. denied, 431 U.S. 917 (1977).

Plaintiff Bar-Meir proposes to amend his Complaint to add claims under 17 U.S.C. § 1202 with respect to works entitled: "Vacuum Tank Design Requirements," "Analytical Study of Ventilation for Pressure Die Casting," "Accurate p-$Q^2$ Calculations," and "other articles that the plaintiff has sent for publication". See Proposed Amended Complaint at ¶¶ 27-30.

As an initial matter, NADCA contends that Plaintiff's reference to

"other articles" is too vague to satisfy the notice pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. NADCA submits that, at a minimum, a copyright plaintiff must identify those original works on which a claim is based. See Carell v. The Schubert Organization, Inc., 104 F.Supp.2d 236, 250-51 (S.D.N.Y. 2000)(copyright plaintiff must identify, inter alia, specific works that are subject of claim in order to survive motion to dismiss).

In the broader sense, NADCA asserts that Plaintiff fails to state a claim as to any of the articles he references in his proposed Amended Complaint and that his proposed amendment including additional claims under the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201 et seq., must be denied. NADCA argues that Plaintiff Bar-Meir's allegations that NADCA has violated § 1202(a)(1) by placing its own "copyright message" on, and claiming to be the owner of, several of the Plaintiff's works are inadequate as a matter of law -- citing Briehl v. General Motors Corp., 172 F.3d 623, 629-630 (8th Cir. 1999); Wald v. Southwestern Bell Corp. Customers Medical Plan, 83 F.3d 1002, 1006 (8th Cir. 1996); Holloway v. Dobbs, 715 F.2d at 392 -- and are both frivolous and futile. In support of its position, NADCA submits that 17 U.S.C. § 1202, on which Plaintiff bases his new claims, provides:

> (a) **False copyright management information**. -- No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement –
>
> > (1) provide copyright management information that is false . . .

"Copyright management information" is defined in 17 U.S.C. § 1202(c) as information conveyed in connection with copies or phonorecords of a work or performance or displays of a work, including in digital form, and encompasses, inter alia, the following types of information: the title and other information identifying the work; the name of, and other identifying information about, the author of the work: the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright. A proper notice of copyright includes either the symbol "©", or the word "Copyright" -- or its abbreviation "Copr.", -- followed by the year of first publication and the name of the copyright owner. 17 U.S.C. § 401(b).

Defendant NADCA contends that Plaintiff's mere allegations that NADCA "put its own copyright message and claims to be copyright owner of the work" (see the original "First Amendment to the Complaint" attached to Plaintiff's Motion to Amend, at ¶¶ 27-29; and the second "First Amendment to the Complaint" attached to Plaintiff's Reply, at ¶¶ 34-36), do not state a cause of action under § 1202(a)(1), which on its face requires much more. NADCA asserts that 17 U.S.C. §1202(a)(1) requires that the conduct be "knowing" and done with "intent to induce, enable, facilitate, or conceal infringement." See also, Kelly v. Arriba Soft Corp., 77 F.Supp.2d 1116, 1121 (C.D.Cal. 1999)("Section 1202(a) prohibits falsification of copyright management information with the intent to aid copyright infringement."). NADCA contends

that Plaintiff's allegations cannot reasonably be construed as stating a claim under § 1202(a)(1) -- even if given the most liberal construction. The Court agrees.

A careful look at the title pages of the disputed documents upon which Plaintiff's proposed claims rely, (see Proposed Amended Complaint, ¶¶ 27-30), reveals that each of the three articles include the title of the work, and each identifies Plaintiff Bar-Meir as an author. See Exhibits A-C to the Affidavit of Daniel L Twarog.[2] NADCA points out, however, that none of the title pages of the individual articles contain any other kind of "copyright management information," such as copyright notice or other information purporting to identify who owns the copyright in the article, or even the year of the article's publication. See id.

Indeed, two of the three articles co-authored by Plaintiff, namely "Vacuum Tank Design Requirement," and "Analytical Study of Ventilation for

---

[2] Because Plaintiff refers to and relies upon these documents in his Proposed Amended Complaint but has not attached them, the Court considers the undisputedly authentic portions of the articles at issue which are attached as exhibits to Mr. Twarog's Declaration. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997)(quoting In re Donald J.Trump Sec. Litig., 7 F.3d 357, 358 n.9 3d Cir. 1993))("a court may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document."); see also Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)(on motion to dismiss, court may consider materials "that are necessarily embraced by the pleadings")(citations omitted); Vizenor v. Babbitt, 927 F.Supp. 1193, 1197-98 (D.Minn. 1996)(Kyle, J.)(court may consider document introduced by defendant in motion to dismiss where document is relied on in complaint but not attached to it).

Pressure Die Casting," are included in NADCA's biennial publication of its International Die Casting Congress & Exposition, namely the 19th and 20th editions of Transactions. See Exhibits A and B to the Twarog Decl. The first two paragraphs of the foreword contained in the November 1999 edition of Transactions reads as follows:

> The 20th International Die Casting Congress is a collection of technical presentations and papers from industry and academic researchers. This work has been supported by prominent businesses and educational institutions around the world in an effort to better understand the die casting process and to improve its capabilit[ies] to exceed customer requirements.
>
> The NADCA International Council has reviewed, edited, and selected the technical papers for this Congress. Our goal was to present the latest developments in die casting with an emphasis on technical validity and merit. This is an International Congress. With that in mind, an objective of the Congress Committee was to seek out research internationally. The result is a series of papers representing the efforts of researchers across the globe. . . .

Exhibit A to the Twarog Decl. The 19th edition (November 1997) of Transactions contains nearly the identical foreward. See Exhibit B to the Twarog Decl. Each of the publications of Transactions now before this Court are copyrighted by the North American Die Casting Association, and contain this language after the copyright announcement:

> All rights reserved. No part of his book may be reproduced or utilized in any form or by any means, electronic or mechanical, including photocopying, recording , or by any information storage and retrieval system without permission in writing from the publisher. Inquiries should be addressed to the North American Die Casting Association, 9701 W. Higgins Rd., Suite 880, Rosemount, Illinois 60018 U.S.A.

> Neither the North American Die Casting Association, nor the authors of these papers:
>
> - Makes any warranty or representation, express or implied, with respect to the accuracy, completeness, or usefulness of the information presented; or
>
> - Assumes any liability with respect to the use of, or for damages resulting from the use of, any information, method, process or equipment des[c]ribed in this document.

See Exhibits A and B to the Twarog Decl.

Finally, on the face of the title page of the article "Vacuum Tank Design Requirements", the following language appears just beneath the title section:

> This paper is subject to revision.. Statements and opinions advanced in this paper or during presentation are the author's and are his/her responsibility, not the Association's. The paper has been edited by NADCA for uniform styling and format. For permission to publish this paper is full or in part, contact NADCA, 9701 W. Higgins Rd., Ste. 880, Rosemount, IL 60018-4721 USA, and the author.

Exhibit A to the Twarog Decl. The following language is contained on the title page of the article "Analytical Study of Ventilation for Pressure Die Casting":

> This paper is subject to revision.. Statements and opinions advanced in this paper or during presentation are the author's and are his/her responsibility, not the Association's. The paper has been edited by NADCA for uniform styling and format. For permission to publish this paper is full or in part, contact NADCA, 9701 W. Higgins Rd., Ste. 880, Rosemount, IL 60018-4721 USA.

See Exhibit B to the Twarog Decl.

The third article at issue in this motion is "Accurate p-Q2

Calculations," was published in the November/December 1994 issue of *Die Casting Engineer.* Again, the article includes the title of the work as set forth in Plaintiff's proposed amended complaint, and Plaintiff Bar-Meir's name appears, as a co-author of the article, directly beneath the title. And once again, there is no "copyright management information" on the face of the article such as copyright notice or other information purporting to identify who owns the copyright in the article, or even the year of the article's publication. See Exhibit C to the Twarog Decl. The informational page at the beginning of *Die Casting Engineer* contains, inter alia, the notice that

> All material copyright 1995 by the North American Die Casting Association. NADCA is an organization dedicated to increasing the fund of knowledge of die casting, fostering educational programs, encouraging the investigation of new techniques, and advancing international development and growth in die casting and allied industries. NADCA is not responsible for any material published in this magazine unless it has been explicitly approved by the NADCA Board of Governors.

Id.

NADCA submits that because NADCA employees create *Die Casting Engineer* and Transactions for NADCA as part of their employment, NADCA owns the copyright in those compilations by operation of law. See 17 U.S.C. § 201 (copyright ownership vests automatically in "author;" "author" of work-made-for-hire is employer or hiring party); and 17 U.S.C. § 101, *s.v.*. "work made for hire" (work by employee within scope of employment is "work made

for hire"); and 17 U.S.C. § 101, *s.v.* "compilation" (compilations include periodical issues and works in which independent works are assembled). Accordingly, NADCA asserts that a copyright notice on *Die Cast Engineer* or Transactions identifying NADCA as the copyright owner is completely proper. And, NADCA argues the fact that the copyright notice for NADCA's November/December 1994 issue of *Die Casting Engineer* states "All material copyright 1995 by the North American Die Casting Association (Exhibit C to the Twarog Decl.), does not invoke the protections of 17 U.S.C. § 1202; and even if it did, it would be to no avail because the notice statement was made at least three years prior to the enactment of the Digital Millennium Copyright Act, and retroactivity cannot be implied. See Bowen v. Georgetown University Hosp. tem, 488 U.S. 204, 208 (1988)("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").

The Court agrees with Defendant NADCA's position on this motion, and finds that Plaintiff Bar-Meir's proposed addition of a claim under 17 U.S.C. § 1202 is futile in that he has failed, as a matter of law, to state claims upon which relief can be granted. Plaintiff has presented no facts to even minimally substantiate his allegations leveled against NADCA pursuant to this statute with respect to the three articles at issue here. In short, Plaintiff has failed to indicate in any way that in publishing Plaintiff's articles, NADCA knowingly and

with the intent to induce, enable, facilitate or conceal infringement, provided copyright information that was false or distributed or imported for distribution copyright management information that is false; nor that NADCA removed or altered copyright management information or distributed or imported for distribution copyright management information knowing that the copyright management information had been removed or altered without authority of Plaintiff or the law. See 17 U.S.C. § 1202. In fact, Plaintiff's allegations in this regard are belied by the face of the three articles as published. As discussed supra, the articles each include the title of the work as set forth in Plaintiff's proposed amended complaint, and Plaintiff Bar-Meir's name appears as a co-author of the article directly beneath the titles. See Exhibits A, B and C to the Twarog Decl. And, furthermore, none of the individual articles contain any other kind of "copyright management information" such as copyright notice or other information purporting to identify who owns the copyright in the article, or the year of the articles' publication. Id. Accordingly, Plaintiff's motion for leave to amend his Complaint to include a claim that Defendant NADCA has violated Section 1202(a)(1) of the Copyright Act is denied.

**2. Plaintiff's Proposed Amendment Relative to Personal Jurisdiction**

Plaintiff Bar-Meir has included without discussion, a paragraph in his proposed Amended Complaint that reads: "On information and believe [sic]

all defendants do business in the State of Minnesota." This represents a change to the original Complaint which contains a paragraph which reads: "All defendants, with the exception of Defendant Andrew D. Behler, do business in the State of Minnesota".

The Court will indulge Plaintiff Bar-Meir on this occasion only, and will construe his improper restructuring of his claims as part of his motion for leave to amend his Complaint. However, in the future the Court reminds Plaintiff that he must adhere to the rules of motion practice as set forth in the Federal Rules of Civil Procedure and the Local Rules for the United States District Court, District of Minnesota.

On February 20, 2001, the Honorable Richard H. Kyle issued a Memorandum, Opinion and Order granting the individual Defendants' motions to dismiss for lack of jurisdiction, and dismissing the Complaint, without prejudice, as to Defendants Herman, Behler, Walkington, Wronowicz, Twarog and Udvardy. Thus, the Court finds that Plaintiff's attempt to amend his Complaint to change the jurisdictional statement relative to the individual Defendants has been mooted by Judge Kyle's dismissal of the individual Defendants. Plaintiff's request in this respect is denied.

### 3. Plaintiff's Proposed Amendment Relative to Walkington Engineering

Plaintiff Bar-Meir has included in the second version of his proposed Amended Complaint attached to his reply memorandum, and without discussion in his memorandum in support of the motion for leave to amend his Complaint, the addition of Walkington Engineering, William Butler and Paul M. Bralower as Defendants in this matter.

NADCA opposes this attempt by Plaintiff to add the new Defendants. NADCA correctly notes in its supplemental memorandum regarding this portion of Plaintiff's motion, that at the February 23rd motions hearing Plaintiff Bar-Meir expressly abandoned his attempt to name Paul Bralower and William Butler in light of Judge Kyle's dismissal of the individual Defendants for lack of personal jurisdiction. As such, Plaintiff's attempt to add Paul Bralower and William Butler as Defendants in this matter is denied as moot. Only the issue of Plaintiff's attempt to add Walkington Engineering as a party Defendant will be discussed here.

Defendant NADCA opposes the addition of Walkington Engineering contained in Plaintiff's revised First Amendment to the Complaint at ¶¶ 6, 10 and 47, asserting that absent some proper reason, this Court should not consider for the first time matters raised in reply. See Mahaney v. Warren County, 206 F.3d 770, 771 n.2 (8th Cir. 2000); see also Golleher v. Aerospace

Dist. Lodge 837, I.A.M.A.W., 837 F.Supp.2d 1053, 1058 (E.D.Mo. 2000).

Here, again in deference to Plaintiff Bar-Meir's pro se status, the Court will – on this single occasion-- entertain Plaintiff's attempt to add Walkington Engineering as a Defendant, despite its improper presentation to NADCA and the Court. NADCA was given the opportunity to provide the Court with a supplement memorandum on this issue, which it did in a timely manner.

The Court notes that in his revised proposed amended complaint Plaintiff alleges no claims against Walkington Engineering that are independent of his claims against William Walkington as an individual. See the revised First Amendment to the Complaint attached to Plaintiff's reply memorandum submitted in support of his motion for leave to amend his Complaint at ¶ 47. Plaintiff's claims against William Walkington have been dismissed without prejudice for lack of personal jurisdiction. See Judge Kyle's Memorandum, Opinion and Order dated February 20, 2001 (Doc. No. 47). The Court will not allow Plaintiff to circumvent Judge Kyle's dismissal of William Walkington by merely replacing Mr. Walkington with Walkington Engineering, absent an independent basis. Plaintiff's "motion" for leave to amend his Complaint to add Walkington Engineering as a Defendant in this matter is denied.

Finally, the Court denies NADCA's request for an award of its attorneys' fees and costs associated with this motion.

### C. Defendant's Motion for Entry of a Protective Order Protecting Confidentiality of Discovery Materials in Civil Case Nos. 00-1666 and 00-1737 (RHK/SRN)

Pursuant to Fed. R. Civ. P. 26(c), Defendant NADCA moves, in both of the above-captioned cases, for entry of a Protective Order intended to: 1) protect confidential information produced in discovery; 2) limit use of discovery materials to the preparation and trial of this action; and 3) protect third parties connected with NADCA from annoyance, embarrassment, oppression, and undue burden and expense.

Following the Court's suggestion made during the November 30, 2000, pretrial scheduling conference, NADCA submits that it forwarded to Plaintiff a draft protective order (in the form attached to this motion) which permitted either party to designate as confidential material that it believes contains commercially sensitive, proprietary, or trade secret information. The draft order also limited the use of material produced in the discovery process solely to the preparation and trial of these actions. Finally, the draft order limited Plaintiff's ability to contact third parties who are members of NADCA or NADCA's Board of Governors except through discovery methods under the Federal Rules of Civil Procedure and approved in advance by the Court. Plaintiff has declined to sign NADCA's proposed protective order.

The Court grants in part and denies in part NADCA's motion for

entry of a protective order governing production and use of documents and information. To this end, the Protective Order attached as Exhibit A hereto shall be in effect for all aspects of both of the above-captioned cases.

Defendant NADCA's motion for entry of its proposed protective order is denied, but the protective order set forth at Exhibit A attached hereto shall govern the proceedings in both of the above-captioned cases.

**D. Defendant NADCA's Motion for Entry of a Protective Order Regarding the Depositions of Andrew Behler and Daniel Twarog in Civil Case No. 00-1737 (RHK/SRN)**

NADCA submits that Plaintiff has noticed the depositions of Mr. Andrew Behler, the Chairman of NADCA's Board of Governors, and Mr. Daniel Twarog, NADCA's president. Despite the fact that both Messrs. Behler and Twarog live and work outside of Minnesota, Plaintiff Bar-Meir insists that the depositions take place in Minneapolis. NADCA asserts that Mr. Behler's deposition should not go forward, but if it does, it should be in Pennsylvania, and Mr. Twarog's should be in Chicago.

In opposition to this motion, Plaintiff Bar-Meir acknowledges that it is customary to assume the deposition should take place in the deponent's vicinity. However, Plaintiff asserts that in the presence of unusual circumstances a court can order a change in the customary practices. Plaintiff

believes that he has presented special circumstances in the way of economic hardship that would justify this Court ordering Mr. Twarog to travel to Minneapolis for his deposition.

At the hearing on this motion the parties agreed to conduct Mr. Behler's deposition by telephone, and will arrange for this to take place at a mutually agreeable time. Thus, Defendant NADCA's motion for protective order is denied as moot with respect to Mr. Behler's deposition.

As for Mr. Twarog's deposition, the parties are granted leave to conduct this deposition either by telephone or video-conference. The Court recognizes Plaintiff Bar-Meir's concern about presenting and discussing deposition exhibits if he is not in physical proximity to Mr. Twarog during the deposition. The Court is not, however, willing to order Mr. Twarog to absorb the cost of traveling to Minneapolis to be deposed by the Plaintiff. However, in an effort to allay Plaintiff's concern about the presentation and discussion of deposition exhibits, and to allow this deposition to occur with the least economic impact to Plaintiff, the Court suggests that the Plaintiff carefully prepare and pre-mark any deposition exhibits. Then, during the telephone or video-conferenced deposition, Plaintiff Bar-Meir can discuss any of the pre-marked exhibits with Mr. Twarog, who will presumably have counsel at his side in Chicago. If this arrangement is not acceptable to the Plaintiff, then Plaintiff will have to travel to Chicago to depose Mr. Twarog. See Pinkham v. Paul, 91

F.R.D. 613, 615 (D.Me. 1981)(the location of a deposition should be at the deponent's residence or place of business); General Leasing Co. v. Lawrence Photo-Graphic Supply, Inc., 84 F.R.D. 130 (W.D. Mo. 1979)("In the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party."); see also Udraitis v. Luka, 142 F.R.D. 675, 676 (N.D. Ind. 1992). "A claim of financial hardship, taken alone, does not demonstrate exceptional or compelling circumstances." General Leasing, 84 F.R.D. at 131 (citation omitted).

Defendant NADCA's motion for entry of a protective order relative to the deposition of Daniel Twarog is denied as moot and, if the suggested arrangement does not work out, NADCA's motion for a protective order is granted.

**E. Plaintiff's Motion to Impose Costs of Service on Defendant in Civil Case No. 00-1666 (RHK/SRN)**

Plaintiff moves for an order imposing the costs of personal service of the Complaint on Defendant NADCA because he believes that since he followed the law to the letter, he should recover his full costs of service. Plaintiff brings his motion pursuant to Fed. R. Civ. P. 4(d)(2). Plaintiff asserts that he sent the Complaint via first class mail to the Defendant along with a request for a waiver

of services of summons. Plaintiff now seeks reimbursement of "costs" of such service in the amount of $764.50.

Defendant NADCA opposes this motion, contending it is not proper to require NADCA to pay Plaintiff's inflated costs of service because NADCA did not receive the Complaint until after Mr. Twarog was personally served, nor did NADCA receive any Notice of Lawsuit and Request for Waiver of Service of Summons forms. See Declarations of Daniel L. Twarog and Ruth Parat.

NADCA contends, as an initial matter, that Plaintiff has not made a proper showing that he has complied with all of the requirements of Fed. R. Civ. P. 4(d)(2), especially as to the explicit requirement in Paragraph 2(A) that "a request for waiver of service by a corporate defendant must be addressed to a person qualified to receive service." Fed. R. Civ. P. 4, Advisory Committee Notes to 1993 Amendments. To be sure, Fed. R. Civ. P. 4(d)(2)(A) requires that, where the defendant is not an individual, the notice and request for waiver of service "shall be addressed . . . to an officer or managing or general agent (or other agent authorized by appointment or law to receive service of process." Defendant NADCA correctly points out that Plaintiff Bar-Meir has made no showing that he complied with this requirement.

Finally, NADCA correctly asserts that effective service of the Complaint was not accomplished when Plaintiff copied NADCA's counsel on an e-mail message that purported to include the text of the Complaint.

The Court denies Plaintiff's motion to impose costs of personal service of the Complaint on NADCA. Plaintiff has simply not shown that he complied with all of the requirements of Fed. R. Civ. P. 4(d)(2), and his "pro se status does not excuse non-compliance with the service requirements under Rule 4." See Rockett v. Marten Transport, Ltd. 2000 WL 816785, *2 (N.D.Ill. 2000). Plaintiff's motion to impose costs of service on NADCA is denied.

**F. Plaintiff's Motion to Compel Interrogatory Answers and Production of Documents in Civil Case No. 00-1666 (RHK/SRN)**

Plaintiff Bar-Meir moves for an order compelling Defendant NADCA to answer outstanding interrogatories and produce documents responsive to pending requests for production of documents. Plaintiff contends that NADCA has improperly claimed that some of the information he has requested in discovery is either irrelevant, burdensome, or confidential. Plaintiff seeks an award of his costs and fees associated with bringing this motion.

In opposition to this motion, NADCA represents that it timely served its responses to Plaintiff's November 2, 2000 interrogatories, document requests and requests for admission. NADCA submits that in a letter dated December 13, 2000, Plaintiff took issue with NADCA's responses to Interrogatories Nos. IV, V, and VI and Document Requests Nos. II, IV, V, and VII. NADCA states that it responded in writing. It is this response by NADCA,

along with some additional interrogatories and document requests, that is the subject of Plaintiff's motion.

To begin, NADCA asserts that it has not wrongfully withheld certain confidential information. NADCA points out that among the documents Plaintiff has requested are those which support NADCA's counterclaim and affirmative defenses, among other things, and include, for example, its advertiser lists which are not public and are proprietary. NADCA represents that once a protective order is entered it will produce responsive confidential information.

The Court notes that a protective order is now in place, as discussed <u>infra</u> at Section C, and covers production of information in both of the above-captioned cases.

Plaintiff's motion to compel was extensively discussed during the motions hearing. Consequently, the Court's written ruling will contain only the briefest of discussion. Plaintiff's motion to compel is:

1) denied as moot as to Interrogatory No. 1 because NADCA supplemented its response to clarify Mr. Twarog's role in response preparation, and NADCA need not disclose the names of consulting attorneys;

2) granted as to Interrogatory No. 2 to the extent that NADCA needs to, *within one week of the date of this Order,* identify every complaint made with respect to the NADCA trademarks at issue in this lawsuit (Civ. No. 00-1666), and not limit its response to legal complaints;

3) denied as to Interrogatory Nos. 4 and 5 because discovery in this matter has been bifurcated and Plaintiff is not entitled to take discovery on the issue of damages until sometime after the June 15, 2001 conclusion of liability discovery;

4) denied as to Document Request No.1 as NADCA represents it has produced all responsive information it has -- subject to well-founded and fully explained objections on the grounds of overbreadth, privilege, or damages issues -- and NADCA will produce responsive confidential information under the auspices of the protective order now in place in these matters;

5) denied as to Document Request No. 2 because NADCA has fully responded (subject to legitimate objections of overbreadth, privilege, or pertinence to damages issues ), and represents it has produced all responsive documents in its possession, custody and control; and

6) denied as to Document Request No. 4 because it seeks damages information. Discovery in this matter has been bifurcated and Plaintiff is not entitled to take discovery on the issue of damages until sometime after the June 15, 2001 conclusion of liability discovery.

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that:

1) Defendant's Motion to Compel Responses to Interrogatories and

Document Requests (Doc. No. 28 in Civil No. 00-1737 and Doc. No. 25 in Civil No. 00-1666) is **GRANTED** in its entirety. Plaintiff shall produce all responsive information within one week of the date of this Order. Defendant's request for an award of attorney's fees and costs incurred in connection with this motion is denied without prejudice;

2) Plaintiff's Motion to Obtain Permission to Amend/Supplement the Complaint in Civil No. 00-1737 (Doc. No. 22) is:

- **DENIED** with respect to Plaintiff's request for leave to amend his Complaint to include a claim that Defendant NADCA violated Section 1202(a)(1) of the Copyright Act;

- **DENIED** with respect to Plaintiff's proposed amendment relative to personal jurisdiction over the individual Defendants;

- **DENIED AS MOOT** with respect to Plaintiff's attempt to add Paul Bralower and William Butler as Defendants in this matter; and

- **DENIED** with respect to Plaintiff's attempt to add Walkington Engineering as a party Defendant;

3) Defendant's Motion for Entry of a Protective Order Protecting the Confidentiality of Discovery Materials (Doc. No. 25 in Civil No. 00-1666) is **GRANTED**;

4) Defendant's Motion for Entry of a Protective Order Protecting the Confidentiality of Discovery Materials (Doc. No. 28 in Civil No. 00-1737) is

**DENIED IN PART AND GRANTED IN PART** as set forth fully in the body of this Order which contains the terms of the Protective Order which shall govern the proceedings in the above-captioned matters;

5) Defendant NADCA's Motion for Entry of a Protective Order Regarding the Depositions of Andrew Behler and Daniel Twarog (Doc. No. 28 in Civil No. 00-1737 and Doc. No. 25 in Civil No. 00-1666) is **DENIED AS MOOT IN PART AND GRANTED IN PART** as set forth in the body of this Order;

6) Plaintiff's Motion to Impose Costs of Service on Defendant (Doc. No. 20 in Civil No. 00-1666) is **DENIED**;

7) Plaintiff's Motion to Compel Answer Questions and Production of Documents (Doc. No. 39 in Civil No. 00-1666) is:

- **DENIED AS** MOOT as to Interrogatory No. 1;
- **GRANTED** as to Interrogatory No. 2 to the extent that NADCA needs to identify every complaint made with respect to the NADCA trademarks at issue in this lawsuit (Civ. No. 00-1666), and not limit its response to legal complaints, and NADCA shall provide Plaintiff with this information within one week of the date of this Order ;
- **DENIED** as to Interrogatory Nos. 4 and 5; and

• **DENIED** as to Document Request Nos.1, 2 and 4, all

as set forth in the body of this Order.

Dated: March 27, 2001.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

# EXHIBIT A

## PROTECTIVE ORDER IN CIVIL CASE NOS. 00-1666 and 00-1737

### DESIGNATION AS CONFIDENTIAL

1. When a person (Producing Party) provides to a party (Discovering Party ) material that the Producing Party believes contains commercially sensitive, proprietary, or trade secret information, including by way of example, confidential research, development, commercial, personnel, or other business information, the Producing Party may designate the material as "Confidential." Material may be designated by marking the first page "Confidential." When a Producing Party who is not a party to this Order produces material received from a party to this Order, the party to this Order may designate the material as "Confidential" and shall be deemed a Producing Party with respect thereto.

2. A Producing Party may correct a designation by notifying in writing the persons to whom the material was provided.

### OBJECTIONS TO CONFIDENTIALITY

3. A party may object to the designation of material by notifying the Producing Party in writing of its reasons therefor. The Producing Party shall, within 7 days after receiving such notice, respond in writing. A party objecting to a designation may move the Court for an order that the material is not

"Confidential." Before filing such a motion, the parties shall confer in a good faith effort to resolve the dispute.

**RESTRICTIONS ON USE OF MATERIAL**

4. All material provided by a Producing Party, including Confidential material, may be used by a Discovering Party only in connection with the preparation and trial of this action and the Discovering Party may not, unless otherwise permitted by law, publish, reproduce, publicly display, or otherwise use any material provided by a Producing Party.

5. Except as ordered by the Court, Confidential material may not be publicly disclosed and may be provided only to:

a. A party;

b. Counsel for a party, their partners, associates, associate counsel, and regularly-employed office staff;

c. Subject to paragraph 7, independent experts retained to provide in connection with the preparation and trial of this action;

d. A person whose testimony is taken (who is not otherwise permitted access to Confidential material) during his or her testimony only;

e. Court reporters and their staff; and

f. The Court and any person employed by the Court whose

duties require access to the material.

6. A party shall not be precluded from showing any material, regardless of its designation, to a person identified therein as its author or recipient.

**IDENTIFICATION OF EXPERTS**

7. Prior to disclosure of Confidential material pursuant to paragraph 5(c) or 5(d), a party shall provide 7 days written notice to the Producing Party, identifying the person. If the Producing Party does not consent in writing to disclosure to the identified person within 7 days after receiving such notice, no disclosure shall be made except by order of the Court. Before seeking such Court order, the parties shall confer in a good faith effort to resolve the dispute. If the Producing Party consents in writing to the disclosure, or if the Court orders the disclosure, the material may be disclosed in accordance with paragraph 9.

**UNDERTAKING TO BE BOUND BY PROTECTIVE ORDER**

8. Except as set forth in paragraph 10, before material is disclosed pursuant to paragraph 5(c) or 5(d), the person shall read a copy of this Order and evidence agreement to be bound by it by signing an Undertaking to be Bound, in the form attached as Exhibit A to NADCA's proposed Protective Order. A copy of this Order and signed Undertaking shall be retained for one year after the termination of this action.

**DEPOSITIONS**

9. Portions of deposition transcripts may be designated Confidential during the deposition or within 15 days after receipt of the transcript. Prior to expiration of this 15-day period, the entire transcript shall be treated as Confidential. After expiration of the 15-day period, the transcript of the designated testimony shall be bound in a separate volume and appropriately marked. If a deposition transcript or exhibit contains Confidential material that cannot conveniently be segregated, a party may request that the entire transcript or exhibit be treated as Confidential.

10. A deponent may be shown and examined about Confidential material if the deponent produced or otherwise has knowledge of the material.

**USE IN COURT FILINGS**

11. If a party files with the Court material containing Confidential material, the filing party shall file the material in a sealed envelope, with a cover sheet identifying, the material as confidential and subject to a protective order.

**USE AT HEARINGS OR TRIALS**

12. If a party reasonably anticipates that it may disclose or offer into evidence at a hearing or trial any material designated pursuant to this Order, it shall give two days notice to the Court and the other party of such disclosure or offer. Notice is satisfied by service of witness and exhibit lists. In the absence of such notice, prior to disclosing any designated material, counsel shall advise

the Court and opposing counsel and shall request, or give the Producing Party the opportunity to request, that persons not authorized by this Order to receive such information be excluded.

**RETURN OF CONFIDENTIAL MATERIAL**

13. Within 30 days after termination of this action, a Producing Party may direct in writing that Confidential material provided by the Producing Party be returned or destroyed. The Producing Party shall bear the reasonable expense of its request for return. Within 30 days after receipt thereof, counsel shall return or destroy the material, as requested, including copies, notes, and any other medium containing the material, except that counsel may (a) destroy Confidential material stored electronically, and (b) retain work product memoranda, pleadings, or other materials that include Confidential material, provided that the material remains appropriately designated.

14. The terms of this Protective Order shall survive and remain in full force and effect after the termination of this action.